FRED MATTHEWS V. THE STATE.

No. 14286.   Delivered May 13, 1931.

The opinion states the case.

*E. A. Camp,* of Rockdale, and *E. A. Wallace,* of Cameron, for appellant.

*A. J. Lewis,* County Attorney, of Cameron, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense is murder; punishment, confinement in the penitentiary for eighteen years.

This is the second appeal of this cause. The report of the case on the former appeal will be found in 116 Texas Crim. Rep., 519, 28 S. W. (2d) 164.

The killing occurred in what is called "Santa Fe" town within the city of Cameron on July 6, 1929. Deceased was shot twice with a pistol, one of the shots being in the neighborhood of the heart and the other shot in the arm. The state's proof showed that he was shot while stand-

ing on the gallery of the Matocha Hardware Store and after being shot, he ran a short way down the alley and fell back of the Santa Fe market and died within a few minutes without making any statement. Deceased, when killed, was in his shirt sleeves with his vest open and was unarmed. The state's evidence further showed that at the time of the shooting appellant was standing behind a truck which was drawn up within a few feet of the Matocha store gallery and that he rested his pistol on the truck bed when he fired. A number of witnesses for the state described the scene of the shooting and testified substantially that at the time deceased was doing nothing and that they saw no movement of his hand, and that after he was shot, he stumbled off the gallery and ran down the alley. The witness Barto McAnulty was passing the scene in a car at the time of the homicide, and was only a few feet from appellant. He testified that he saw appellant get out of the truck, walk behind the cab of the truck, lay the pistol across the truck bed and fire. Also that deceased was doing nothing at the time. After the shots, said witness saw Bob Sammon crank the truck, and leave with the appellant.

Appellant testified that he had just walked across the street to the truck; that he had not gotten in, and that he saw deceased on the gallery and that deceased made a hostile move as if to draw a weapon and he, appellant, fired in self-defense. Appellant also proved by his own testimony and by other witnesses, that theretofore in May, deceased had shot him. Appellant also offered evidence as to prior threats made by deceased to kill him or do him serious bodily injury.

The case was submitted to the jury under a charge on murder, self-defense, and self-defense in connection with threats.

Appellant's counsel in their brief urge three grounds for reversal, substantially as follows: (1) Error predicated on the court's charge to the jury on threats; (2) error predicated on admission of testimony as to prior difficulty between deceased and appellant; (3) error predicated on argument to the jury by state's counsel.

Appellant excepted to paragraph 11 of the court's charge on the ground that same was too restrictive of appellant's right of self-defense based upon communicated threats, in that the court in said paragraph of the charge applied the law of self-defense based upon communicated threats, to the facts of the cause, but after so doing and in connection therewith, did not instruct the jury to find that if they believed, or had reasonable doubt that the appellant shot the deceased within the meaning of the instruction, they should acquit him.

Paragraph 11 of the court's charge on the law of threats, which is complained of by the appellant, is as follows:

"When a defendant accused of murder seeks to justify himself in killing the deceased on the ground of threats against his own life or threats to do him some serious bodily injury, he is permitted to introduce

evidence of the threats alleged to have been so made, but the same will not be regarded as affording a justification for the killing, if any, unless it be shown that at the time of the killing, if any, the person killed, by some act then done manifested an intention as viewed from the standpoint of defendant at the time, to execute the threats so made.

"So in this case, if you believe from the evidence, that prior to the killing, if any, it was communicated to the defendant, or if you believe that he had knowledge thereof, that threats had been made by the deceased to kill or inflict serious bodily injury upon him, defendant, and that defendant believed that such communications as to threats made against him by deceased, Hosch, were true, even though you may believe that no threats had in fact been made, and if you further believe from the evidence that at the time of the killing, if any, the deceased by act or acts then done, reasonably created within the mind of the defendant, as the situation was viewed solely from the defendant's standpoint at the time an apprehension or fear that said deceased, Hosch, was in the act of executing the threats, if any, so communicated, if they were, or was about to execute the same, or if you believe that the deceased, Hosch, by his act or acts or conduct, or either, if any, indicated to the defendant, as the situation was viewed solely from defendant's standpoint at the time, that he, Hosch, was then and there about to attack the defendant and inflict upon him death or serious bodily injury, even though you may believe that no danger in fact existed, and that so believing the defendant shot and thereby killed the deceased, then you are instructed that the same would be a justifiable homicide, and if you so believe, or if you have a reasonable doubt thereof, you must acquit the defendant and say by your verdict 'not guilty'."

The alleged fault or vice complained of by appellant as to this paragraph of the court's charge is to the effect that said charge by its provisions tied the application of the instruction upon self-defense based on communicated threats with the instruction previously given as to self-defense based upon real or apparent danger not connected with communicated threats and by so doing rendered the charge uncertain and confusing.

Such complaints as to this section of the court's charge usually arise in cases where there has been no separate charge given on self-defense upon real or apparent danger and where the wording or arrangement in attempting to set out both propositions in one general statement gives rise to confusion. However, in this case, the trial court in paragraph 10 of the charge gave the jury full instructions on the law of self-defense, generally. This part of the charge is not complained of, but as we understand appellant's exception to paragraph 11, it only applies to that part of it beginning "Or if you believe that the deceased, Hosch, by his act or acts or conduct," and that which follows. As we construe paragraph 11 of the court's· charge, the plain effect and import of said

paragraph is simply an instruction to the jury to acquit in either event, first, if they find that self-defense existed under the proposition of threats, as theretofore explained; or, second, if they find that deceased by his act or conduct indicated to defendant that deceased was about to attack him; and that under either state of affairs as viewed from appellant's standpoint at the time, the jury is simply told to acquit if they find either of said state of affairs to exist. The only possible effect that the part of paragraph 11 complained of could have had was to give an additional charge on self-defense as had theretofore been given in paragraph 10. This attack on paragraph 11 of the charge, when considered (as it must be) in connection with paragraph 10 of the charge, is not deemed injurious to the rights of appellant but would be in his favor and therefore would not call for a reversal under article 666, C. C. P.

The matters complained of by appellant as shown by bills of exception Nos. 1, 2, 3 and 4, involve the testimony of appellant on crossexamination, and of the witnesses, Ella May and Marie Hosch, on rebuttal by the state, as to the details of the first shooting, which was admitted over timely objections by appellant. The same questions arising as to the testimony of each of the witnesses, as well as of appellant, the bills will be considered together.

Appellant complains of the admission of said testimony on the ground that same was prejudicial and injected into the case details of another transaction between appellant and deceased, and was highly inflammatory.

The qualifications of the court to said bills of exception show that the state had not attempted to prove any previous trouble or shooting between the appellant and deceased prior to the killing in July, 1929, for which the appellant was on trial, and it was after the state had rested that the appellant went into said prior difficulty, and that the appellant himself while upon the witness stand testified on direct examination as to having been shot by deceased.

Appellant having voluntarily gone into the facts of said previous difficulty, we know of no rule of evidence devised for the purpose of eliciting the truth and aiding in the administration of justice that would permit one side to bring out what it desired to disclose to the jury about a prior difficulty between the same parties, and not permit the other side to convey to the jury its version of said prior difficulty, which might be necessary to make it fully understood or to explain the same. It is the rule recognized by all courts and text writers to give the right to one against whom a part of an utterance or transaction has been introduced the privilege of introducing the remainder. See Wigmore on Evidence (2nd Ed.), vol. 4, sec. 2113; also vol. 3 (2nd Ed.), sec. 1786. This principle has found expression in our own statutory law manifested by article 728, C. C. P. (1925), which is as follows: "When part of an act, declaration or conversation or writing is given in evidence by one

party, the whole on the same subject may be inquired into by the other, as, when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

By bill of exception No. 5 appellant complains of the· action of the court in permitting the witness Dr. M. C. Sapp (and other witnesses who testified to substantially the same affect) to testify as follows: "I knew his (the deceased's) character as to whether he was a man of violent or dangerous character or a man of kind and inoffensive disposition. His character was kind and inoffensive."

The appellant objected because he had made no attack or questioned the character of deceased in any way and contended that in the absence of such an attack, the state was not privileged to introduce evidence· as to deceased's character. The court qualified the bill to the effect that the appellant in putting on his case had proven by several witnesses that prior to the homicide and sometime in June, 1929, and after appellant had been shot by deceased, Hosch, in May,·that deceased had made threats against the life and safety of appellant and that said witnesses communicated said threats to the appellant prior to the homicide. We see no error in the admission of this testimony. Proof of communicated threats of deceased when introduced in evidence by defendant authorized the state to prove the good character for peace of deceased, though the defendant offered no proof of the character of deceased. See article 1258, P. C.; Branch's Ann. P. C., sec. 2095; Russell v. State, 11 Texas App., 296; Sims v. State, 38 Texas Crim. Rep., 642; Canon v. State, 59 Texas Crim. Rep., 407, 128 S. W., 146; Williams v. State, 61 Texas Crim. Rep., 356, 136 S. W., 771.

The remaining bill of exception No. 6 was taken to an extended argument of state's counsel, all of which is set forth in the bill. Said bill sets out the statements of the state's attorney, the remarks of the court and the statements of appellant's attorneys in regard to said argumen. Much of the argument appearing in the bill is clearly proper, as the state's attorney had the right to draw such legitimate inferences as he pleased from the facts proven. A bill of exception which complains of argument, part of which is permissible and pertinent and part of which is improper, cannot be held to present a complaint which can be supported by this court. See Moore v. State, 107 Texas Crim. Rep., 287; Newman v. State, 99 Texas Crim. Rep., 323; Nelson v. State, 99 Texas Crim. Rep., 564. We believe said bill as presented is too general and cannot be considered under the general rules laid down in the cases mentioned.

Being of the opinion that none of the bills of exception herein pre-

sented show such error as would call for a reversal of this case, the judgment will be affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.